UNITED STATES DISTRICT COURT
MIDDLE **DISTRICT OF FLORIDA**
Tampa Division

Victor Gaines,
*Plaintiff,*
v.
TRANS UNION, LLC, EXPERIAN INFORMATION SOLUTIONS, INC., and EQUIFAX INFORMATION SERVICES LLC,
Defendants,
_____/   CASE NO.:

## PLAINTIFF'S COMPLAINT
## JURY DEMAND

1. Plaintiff, Name of Plaintiff (hereinafter "Plaintiff") brings this action against

2. Defendants Trans Union, LLC ("Trans Union"), Experian Information Solutions, Inc. ("Experian") and Equifax Information Services LLC ("Equifax") for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et. seq. (hereinafter "FCRA").

## JURISDICTION AND VENUE

3. This Court has jurisdiction under 28 U.S.C. § 1331 because this action arises under the laws of the United States.

4. Defendants' voluntary contact with Plaintiff in Florida made it foreseeable that they would be hailed into a Florida court. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985).

5. Venue here is proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim occurred in Hillsborough County, Florida.

## PARTIES

6. Plaintiff is a natural person who, at all times relevant to this action is and was a resident of Hillsborough County, Florida and is a "consumer" as defined by 15 U.S.C. § 1681a(c), 15 U.S.C. §1692a(3) and Florida Statute §559.55(8).

7. Trans Union is a "consumer reporting agency" as defined by the FCRA, 15 U.S.C. § 1681a(f).

8. Trans Union is a limited liability company incorporated under the laws of the State of Delaware, whose members are citizens of the state of Illinois. Trans Union is authorized to do business in and regularly conducts business in the State of Florida and engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681d to third parties.

9. Experian is a "consumer reporting agency" as defined by the FCRA, 15 U.S.C. § 1681a(f).

10. Experian is an Ohio corporation incorporated under the laws of the State of Delaware. Experian is authorized to do business in the State of Florida and engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681d to third parties.

11. Equifax is a "consumer reporting agency" as defined by the FCRA, 15 U.S.C. § 1681a(f).

12. Equifax is a Georgia limited liability company incorporated under the laws of the State of Delaware. Equifax is authorized to do business in the State of Florida and engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681d to third parties.

13. Defendant use instrumentalities of interstate commerce for the purpose of furnishing information on specific trade accounts to the consumer reporting agencies, Trans Union, Equifax and Experian, (collectively "credit reporting agencies").

14. These instrumentalities of interstate commerce are largely electronic, written, or telephonic communications which have effects on consumers and their credit reports within the State of Florida.

## STATUTORY FRAMEWORK OF THE FAIR CREDIT REPORTING ACT

15. The Fair Credit Reporting Act, 15 U.S.C. §1681 et. seq., was originally enacted in 1970 for the purpose of regulating the collection, dissemination, and use of consumer credit information.

16. Congress found that "[i]naccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system." See 15 U.S.C. §1681(a)(1).

17. "The aim of the Fair Credit Reporting Act is to see that the credit reporting system serves the consumer as well as the industry. The consumer has a right to information which is accurate; he has a right to correct inaccurate or misleading information; he has a right to know when inaccurate information is entered into his file; he has a right to see that the information is kept confidential and is used for the purpose for which it is collected; and he has a right to be free from unwarranted invasions of his personal privacy." The Fair Credit Reporting Act seeks to secure these rights." Hearings on S. 823 Before the Subcomm. on Financial Institutions of the S. Comm. on Banking and Currency, 91st Cong. 2 (1969).

18. A "furnisher of information" provides information about consumers' credit history to credit reporting agencies. See 15 U.S.C. §1681s-2.

19. Congress also found that "[c]onsumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers" and that "[t]here is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." See 15 U.S.C. § 1681(a)(3),(4).

20. The FCRA was amended by Congress in 2003 by the Fair and Accurate Credit Transaction Act ("FACTA"), Pub L. No. 108-159 (2003), in order to, among other things, "prevent identity theft, improve resolution of consumer disputes, [and] improve the accuracy of consumer records."

21. Prior to the 2003 amendments, victims of identity theft were afforded no special protections under the FCRA. As such, consumer reporting agencies ("CRAs", and also referred to herein as "credit reporting agencies") were under no obligation to treat an identity theft claim any different than a regular dispute.

22. The 2003 amendments made it easier for identity theft victims to get information resulting from identity theft removed from their credit reports. By enacting 15 U.S.C. § 1681c-2(a), Congress required credit reporting agencies to block the reporting of any information in the file of a consumer that the consumer identifies as resulting from identity theft, not later than four business days after receiving (1) appropriate proof of identity, (2) a copy of an identity theft report, (3) the identification of such information by the consumer, and (4) a statement by the consumer that the information is not information relating to any transaction by the consumer.

23. A credit reporting agency may decline to "block" information only if the credit reporting agency reasonably determines that the consumer's request is made in error, was based on a material misrepresentation or the consumer obtained goods, services or money as a result of

the blocked transaction. See 15 U.S.C. § 1681c-2(c)(1). 15. If a block is declined, the credit reporting agency must then notify the consumer promptly, in the same manner as consumers are notified of the reinsertion of information under § 1681i(a)(5)(B).  See 15 U.S.C. §§ 1681c-2(c)(2).

24. In the absence of such a determination of material misrepresentation or error, a credit reporting agency cannot decline a request to block without first requesting additional information from the consumer for the purpose of determining the validity of the alleged identity theft. See 12 C.F.R. § 1022.3(i)(1)(iii)(A).

25. "[I]f a CRA receives a police report containing detailed information as well as the signature, badge number, or other identifying information for the officer taking the report, it is not reasonable for the CRA to request additional information without 'an identifiable concern,' such as an indication that the report was fraudulent." Osada v. Experian Info. Solutions, Inc., No. 11-C-2856, 2012 WL 1050067, at *3 (N.D. Ill. Mar. 28, 2012) (citing 16 C.F.R. § 603.3(c)(1) (renumbered at 12 C.F.R. § 1022.3(i)(3)(i)).

26. The FCRA requires a credit reporting agency to "follow reasonable procedures to assure maximum possible accuracy of the information" each time it prepares a consumer report. 15 U.S.C. § 1681e(b).

27. The FCRA requires that if a consumer disputes any item of information contained in their credit file, the credit reporting agency must "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller."15 U.S.C.S. § 1681i(a)(1)(A).

28. In performing the reinvestigation, the FCRA requires the credit reporting agency to "review and consider all relevant information submitted by the consumer in the period described in paragraph (1)(A) with respect to such disputed information." 15 U.S.C.S. § 1681i(a)(4).

29. The FCRA also requires the credit reporting agency to provide notification of the dispute to the person who provided any item that is disputed, along with all relevant information received from the consumer regarding the dispute. 15 U.S.C.S. § 1681i(a)(2)(A).

30. The FCRA requirements are important, because they help credit reporting agencies ensure that the information in their consumer reports is accurate, they assure that consumers know all the information that is in their files and who has received or requested their reports, and they protect consumer privacy.

31. If the violation is negligent, the FCRA allows the consumer to recover actual damages. 15 U.S.C. § 1681o(a).

32. If the violation is willful, the consumer may recover any actual damages, or statutory damages of not less than $100 and not more than $1,000, and punitive damages. 15 U.S.C. § 1681n(a).

33. A consumer who succeeds on a FCRA action is also entitled to recover their costs and reasonable attorney fees. 15 U.S.C. §§ 1681n(a)(3), 1681o(a)(2).

34. The FCRA provides a private right of action against any person that violates the provisions of the FCRA. See 15 U.S.C. §§ 1681o, 1691n.

35. The FCRA prohibits a CRA from furnishing a consumer report on a consumer unless it has reason to believe that the person requesting the report intends to use the information in connection with a credit transaction, insurance underwriting, or other legitimate business

purpose involving the consumer on whom the information is to be furnished. 15 U.S.C. § 1681b(a)(3).

36. The FCRA prohibits a CRA from furnishing to any person a record of inquiries in connection with a credit or insurance transaction that is not initiated by a consumer. 15 U.S.C. § 1681b(c)(3).

37. "Furnishers of information" under the FCRA, pursuant to 15 U.S.C. §1681s-2(b) to conduct a reasonable investigation into each of the written disputes that it receives from the credit reporting agencies. See also Hinkle v. Midland Credit Mgmt., Inc., 827 F.3d 1295, 1302 (11th Cir. 2016).

38. The FCRA requires credit reporting agencies to "follow reasonable procedures to assure maximum possible accuracy of" consumer reports. 15 U.S.C. § 1681e(b). If a consumer disputes information contained in their credit report, the FCRA requires a credit reporting agency to "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller."15 U.S.C.S. § 1681i(a)(1)(A).

39. If the disputed information is inaccurate or incomplete or cannot be verified, the consumer reporting agency "shall…(i) promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based on the results of the reinvestigation; and (ii) promptly notify the furnisher of that information that the information has been modified or deleted from the file of the consumer." 15 U.S.C. § 1681(a)(5)(A)(i),(ii).

40. If the violation is negligent, the FCRA allows the consumer to recover actual damages (§ 1681o(a)); however, if the violation is willful, the consumer may recover any actual damages or statutory damages from not less than $100.00 and not more than $1,000. § 1681n(a).

41. Under the FCRA, the term "consumer report" generally refers to:

42. any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for:

    i. credit or insurance to be used primarily for personal, family, or household purposes;

    ii. employment purposes; or

    iii. any other purpose authorized under section 1681b of this title.

43. U.S.C. § 1681a(d)(1).

44. The terms "consumer report", "credit report", and "consumer credit report" are used synonymously herein.

45. National CRAs and Furnishers Communicate Consumer Disputes and Responses via the E-Oscar Reporting Platform

46. The FCRA requires CRAs to implement an automated reinvestigation system through which furnishers of information to the CRAs may report the results of a reinvestigation that finds incomplete or inaccurate information in a consumer's file. 15 U.S.C. § 1681i(a)(5)(D).

47. To comply with the automated dispute reinvestigation requirements of the FCRA, Trans Union, Equifax, and Experian along with Innovis Data Solutions, Inc., developed and

implemented a browser-based software system that allows the CRAs to electronically notify furnishers quickly and easily of disputed credit reporting information, and for furnishers to quickly and easily respond to such disputes following the furnisher's investigation of the disputed information.

48. The system is commonly referred to as e-OSCAR (Online Solution for Complete and Accurate Reporting) and was designed to be Metro 2 compliant. See http://www.e-oscar.org/gettingstarted (last accessed December 9, 2025).

49. The e-OSCAR system primarily supports Automated Credit Dispute Verification ("ACDV") and Automated Universal Data Form ("AUD") processing, as well as other consumer-dispute-related processes. See http://www.e-oscar.org/gettingstarted (last accessed December 9, 2025).

50. The National CRAs provide notice of a consumer's dispute to data furnishers in the ACDV format and forward the ACDV to the furnisher through e-OSCAR.

51. If a furnisher's investigation of a consumer's dispute determines that the information in dispute is incomplete or inaccurate, the FCRA requires the furnisher to correct the information not only with the CRA that sent the ACDV, but with all other CRAs to whom the furnisher reported that information. 15 U.S.C. § 1681s-2(b)(1)(D).

52. The e-OSCAR system facilitates the furnisher's compliance with 15 U.S.C. § 1681s-2(b)(1)(D) by sending a "Carbon Copy" of an ACDV response "to each CRA with whom the [furnisher] has a reporting relationship" in addition to the response to the initiating CRA. See http://www.e-oscar.org/gettingstarted (last accessed December 9, 2025).

53. Additionally, a furnisher can manually correct a tradeline with a CRA other than the one that initiated a dispute by sending an AUD within e-OSCAR.

54. Trans Union, Experian, and Equifax each require data furnishers that report to them respectively to register with and use e-OSCAR, and state that e-OSCAR is "in compliance with FCRA and Metro 2 standards." See https://www.transunion.com/data-reporting/support-teams (last accessed December 9, 2025).

## FACTUAL ALLEGATIONS

### PLAINTIFF AND STUDENT LOAN DISCHARGE BACKGROUND

55. Plaintiff Victor R. Gaines ("Plaintiff") is a natural person and a "consumer" within the meaning of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681a(c).

56. Plaintiff previously obtained federal student loans issued by the United States Department of Education ("DOE").

57. The loans were serviced by third-party servicers appointed by the DOE, including Nelnet and later Aidvantage.

58. Nelnet ceased servicing Plaintiff's federal student loans in or about 2019, and the loans were transferred to another DOE-appointed servicer.

59. Plaintiff submitted a Borrower Defense to Repayment application, asserting that the underlying loans were legally unenforceable.

60. On January 17, 2025, the DOE issued an official Borrower Defense discharge notice, discharging Plaintiff's federal student loans and rendering the loans null, void, and unenforceable.

61. Despite the discharge, multiple consumer reporting agencies continued to report DOE student loan tradelines as open, delinquent, or otherwise active. As a direct result of the continued inaccurate reporting of discharged federal student loan tradelines, Plaintiff was denied a loan for which he applied, causing financial harm and delay in obtaining credit.

## DISPUTES WITH EQUIFAX INFORMATION SERVICES LLC

62. At all relevant times, Equifax Information Services LLC ("Equifax") maintained a consumer credit file for Plaintiff and reported multiple DOE-related tradelines and other disputed items.

63. Plaintiff repeatedly disputed inaccurate Equifax reporting after receipt of the January 17, 2025 DOE discharge.

64. Several disputes were submitted directly by Plaintiff without retained copies; however, Equifax generated written reinvestigation results confirming receipt and processing.

**Equifax Disputes and Outcomes**
**March 5, 2025 — Tradeline Dispute**

65. On or about March 5, 2025, Plaintiff disputed the Aidvantage tradeline (*0211).

66. In a reinvestigation result dated April 5, 2025, Equifax verified the tradeline despite the DOE discharge and continue to report inaccurate balance and high credit amounts .

**May 2, 2025 — Tradeline Dispute**

67. On or about May 2, 2025, Plaintiff disputed the DOE tradeline ending *7799 and tradeline ending in *7899.

68. In a reinvestigation result dated June 3, 2025, Equifax modified the tradelines (additional information, close date, scheduled payment, and account history) but did not delete the accounts. Instead Equifax continued to report that the accounts were 120 days past due and otherwise verified accounts.

**June 8, 2025 — Tradeline Dispute**

69. On or about June 8, 2025, Plaintiff again disputed the DOE tradelines ending *7799/7899.

70. In a reinvestigation result dated July 9, 2025, Equifax again modified the tradeline without deletion and continued to report derogatory data regarding the account including stating that at the time of closure the account was 120 days past due.

### July 7, 2025 Tradeline Disputes

71. Plaintiff disputed the DOE tradeline ending *7799 yet again

72. In reinvestigation results dated August 8, 2025, Equifax continued to verify the tradeline and report derogatory information regarding the account including the 120 days alter remark.

### July 28, 2025 — Tradeline Dispute

73. On or about July28, 2025, Plaintiff again disputed the DOE tradelines ending *7799/7899.

74. In a reinvestigation result dated August 28, 2025, Equifax again modified the tradeline without deletion and continued to report derogatory data regarding the account including stating that at the time of closure the account was 120 days past due.

### August 5, 2025 — Tradeline Dispute

75. **Item:** DOE tradeline (*7899 and *7799)

76. On August 5, 2025, Plaintiff disputed the DOE tradeline ending *7899 and *7799.

77. In a subsequent Equifax credit report dated September 4, 2025, Equifax verified the tradeline.

**November 3, 2025 — Tradeline Dispute**

78.     **Item:** DOE tradeline (*7899 and *7799)

79.     On November 3, 2025, Plaintiff disputed the DOE tradeline ending *7899 and *7799.

80.     In a subsequent Equifax credit report dated December 16, 2025, Equifax deleted the DOE tradeline.

81.     Despite the DOE discharge requiring cancellation of the underlying debt, Equifax repeatedly chose to modify account fields rather than delete the discharged tradelines.

**DISPUTES WITH EXPERIAN INFORMATION SOLUTIONS, INC.**

**Prior Undocumented Disputes**

82.     Prior to November 2025, but within 2 years of the filing of this complaint - Plaintiff submitted disputes to Experian Information Solutions, Inc. ("Experian") regarding inaccurate DOE student loan reporting of tradelines (*7899 and *7799).

83.     Experian's failure to provide reinvestigation results prevented Plaintiff from timely correcting inaccurate credit reporting.

**DISPUTES WITH TRANSUNION LLC**

84.     **Item:** DOE / Nelnet tradeline (*7799)

85.     On or about April 27, 2025, Plaintiff disputed the DOE/Nelnet tradeline ending *7799 and account *7899.

86.     Transunion's publication of the DOE tradelines on or before April 27, 2025, despite being put on notice by the DOE on or about January 17, 2025 is evidence of their inability to maintain maximum possible accuracy.

87. Defendants' derogatory and inaccurate reporting of the DOE/Nelnet tradeline ending *7799 and account *7899 on Plaintiff's credit reports negatively reflects upon Plaintiff's financial obligations, credit score and credit worthiness to existing and potential creditors.

88. Courts have regularly held that allegations of lower credit scores, taken as true, are sufficient to allege a concrete injury-in-fact for the purpose of standing under Article III. See Pedro v. Equifax, Inc., 868 F.3d 1275 (11th Cir. 2017) ("[H]er credit score dropped 100 points as a result of the challenged conduct. Because Pedro alleged that she suffered an injury in fact, she has standing to pursue her complaint."); See Diedrich v. Ocwen Loan Servicing, LLC, 839 F.3d 583 (7th Cir. 2016) (standing where Plaintiffs alleged that they "have suffered damage to their credit and been forced to pay Ocwen greater payments and a higher interest rate"); See Santangelo v. Comcast Corp., 162 F. Supp. 3d 691 (N.D. Ill. 2016) ("a depleted credit score is sufficient to constitute an injury-in-fact for the purposes of establishing Article III standing"); See Binns v. Ocwen Loan Servicing, LLC, No. 14- 01764, 2015 U.S. Dist. LEXIS 132743, 2015 WL 5785693, at *9 (S.D. Ind. Sept. 30, 2015) ("injuries to plaintiffs' credit scores and reputations were considered intangible harms"); See Rothman v. U.S. Bank Nat'l Ass'n, No. 13-03381, 2014 U.S. Dist. LEXIS 141100, 2014 WL 4966907, at *5 (N.D. Cal. Oct. 3, 2014) ("Injury to a credit score is sufficient to constitute 'actual damages'"); See Green v. RentGrow, Inc., No. 2:16cv421, 2016 U.S. Dist. LEXIS 166229 ("A decrease in credit score may still establish an injury in fact sufficient to confer standing"); See Adams v. Fifth Third Bank, No. 3:16-CV-00218-TBR, 2017 U.S. Dist. LEXIS 18932 (W.D. Ky. Feb. 9, 2017) ("Plaintiffs' allegations of lower credit scores … are sufficient to allege a concrete injury-in-fact for the purposes of standing under Article III."); and, See Coulbertson v. Experian Info. Sols., Inc., No. 16-cv-05672-RS, 2017 U.S. Dist. LEXIS 69484 (N.D. Cal. Mar. 24, 2017) ("At a minimum,

Coulbertson has alleged a sufficient injury-in-fact through her claim that her credit score suffered as a result of the credit report she disputes").

89. As a result of Defendants' conduct, including the continued publication of false identifying information or tradelines, Plaintiff suffered concrete injuries, including but not limited to emotional distress and manifestations of emotional distress associated with fraudulent information remaining in his credit files, damage to his reputation for credit worthiness, loss of the ability to purchase and benefit from credit, time spent dealing with credit report disputes, expenses associated with credit report disputes and the deprivation of his statutory rights to accurate reporting and meaningful dispute resolution. These injuries are concrete and particularized and confer standing under Article III. See Coulter v. Sagestream, LLC, 501 F.Supp.3d 298 (2020); Norman v. Trans Union, LLC, 669 F.Supp.3d 351 (2023); Chaitoff v. Experian Information Solutions, Inc., 79 F.4th 800 (2023).

## VIOLATIONS OF 15 U.S.C. §1681e(b)

## AGAINST TRANS UNION

90. Plaintiff incorporates by reference paragraphs _____(must be individually stated) as if fully stated herein.

91. Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it publishes and maintains concerning the Plaintiff.

92. After receiving Plaintiff's disputes, Trans Union was placed on notice that it was reporting fraudulent information, yet Trans Union continues to include the fraudulent information in Plaintiff's credit file.

93. Trans Union's acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

94. In the alternative, Trans Union negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

95. WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Trans Union in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## VIOLATIONS OF 15 U.S.C. §1681i

## AGAINST EXPERIAN

96. Plaintiff incorporates by reference paragraphs _____(must be individually stated) as if fully stated herein.

97. During the relevant time frame, Experian received Plaintiff's disputes which requested that the fraudulent information be removed from her credit file.

98. Experian violated 15 U.S.C. § 1681i by failing to correct, update or delete inaccurate information in Plaintiff's credit file after receiving actual notice of inaccuracies contained therein.

99. Experian's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

100. Alternatively, Experian negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

101. WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Experian in the form of actual damages, statutory damages, punitive damages, attorneys'

fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

### VIOLATIONS OF 15 U.S.C. §1681e(b)

### AGAINST EXPERIAN

102. Plaintiff incorporates by reference paragraphs _____(must be individually stated) as if fully stated herein.

103. Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it publishes and maintains concerning the Plaintiff.

104. After receiving Plaintiff's disputes, Experian was placed on notice that it was reporting fraudulent information, yet Experian continues to include the fraudulent information in Plaintiff's credit file.

105. Experian's acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

106. In the alternative, Experian negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

107. WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Experian in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances

### VIOLATIONS OF 15 U.S.C. §1681i

### AGAINST EQUIFAX

108. Plaintiff incorporates by reference paragraphs _____(must be individually stated) as if fully stated herein.

109. During the relevant time frame, Equifax received Plaintiff's disputes which requested that the fraudulent information be removed from her credit file.

110. Equifax violated 15 U.S.C. § 1681i by failing to correct, update or delete inaccurate information in Plaintiff's credit file after receiving actual notice of inaccuracies contained therein.

111. Equifax's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

112. Alternatively, Equifax negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

113. WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Equifax in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

### **VIOLATIONS OF 15 U.S.C. §1681e(b)**

### **AGAINST EQUIFAX**

114. Plaintiff incorporates by reference paragraphs _____(must be individually stated) as if fully stated herein.

115. Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it publishes and maintains concerning the Plaintiff.

116.    After receiving Plaintiff's disputes, Equifax was placed on notice that it was reporting fraudulent information, yet Equifax continues to include the fraudulent information in Plaintiff's credit file.

117.    Equifax's acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

118.    In the alternative, Equifax negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

119.    WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Equifax in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: 3/3/2026

Respectfully submitted,

SHARMIN & SHARMIN, P.A.

/s/ Eiman Sharmin
Eiman Sharmin, Esq.
eiman@sharminlaw.com
FBN: 716391
830 North Federal Highway
Lake Worth, FL 33460
Main: 561-655-3925
Fax: (844) 921-1022
Attorneys for Plaintiff